UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| LEE ANN KOPEY, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 3:11 CV 477 |
|  | ) |  |
| JAMIE BROWN and | ) |  |
| PROGRESSIVE PALOVERDE | ) |  |
| INSURANCE COMPANY, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## OPINION AND ORDER

Plaintiff Lee Ann Kopey brought this action alleging that defendant Jamie Brown, an uninsured motorist, negligently caused an automobile collision in which Kopey suffered personal injuries, and against her own insurer, Progressive Paloverde Insurance Company ("Progressive"), alleging that it has refused to comply with the terms of her uninsured motorist coverage. Progressive has moved for a summary judgment in its favor, (DE #17), and moved to strike a request for sanctions made by plaintiff Kopey. (DE #22.)

### I. Legal Standard

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes

summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in his or her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). If the nonmoving party fails to establish the existence of an essential element on which he or she bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

## II.     Facts

For present purposes, there are no underlying facts in dispute in this case. The only dispute is whether those facts are enough to create an issue for the jury to decide as to causation: that is, whether plaintiff Kopey has sufficient evidence that she suffered any personal injury in the collision with defendant Brown. The court now concisely summarizes the underlying facts.

The accident with Brown occurred on August 13, 2010. A little more than three years prior to that, Kopey had been in another auto accident, in March 2007. In the 2007 accident the car Kopey was traveling in was broadsided by a semi tractor-trailer truck

going approximately 55 miles per hour. Kopey suffered serious injuries including a lumbar-spine fracture, a facial laceration, a traumatic brain injury and a left-knee contusion. According to Kopey's treating physician, Dr. Timothy E. Davis, after that accident Kopey had been "struggling to get back to normal" from her injuries but had not made it "completely back to baseline" at the time of the 2010 collision with Brown. (DE #18-1 at 23-24.)

In the collision with Brown, Kopey had come to a complete stop at the intersection of McKinley and Division Streets in Mishawaka, Indiana. She looked in her rear-view mirror, saw a car approaching her at a rapid rate, and braced for impact. The approaching car collided with the rear of Kopey's auto pushing it into the car stopped in front of Kopey. Although Kopey's air bags did not deploy, her car was a total loss. Immediately after the impact Kopey's back, head, neck, chest, left arm and left wrist were all bothering her, and by the time she arrived at the emergency room, her left knee was painful. She had no broken bones, but she had bruising on her chest which gradually subsided. In the aftermath, she has continued to have headaches, neck pain, memory problems, back pain, left wrist problems (with grip, numbness and stiffness), knee pain and swelling, abdominal pain, and trouble sleeping.

Pursuant to Fed. R. Civ. P. 26(a)(2)(C), Kopey's treating physician Dr. Davis has provided a summary report. In it, he states that "[c]omplicating" her history are the injuries she suffered in the 2007 accident. (DE #18-1 at 23.) Dr. Davis continues:

> She had gotten to the point where she was using less pain medication and doing yard work and housework at the time when she was reinjured in 2010.
>     Lee Ann Kopey now has pain with all of her activities of daily living . . .. The patient has a chronic pain situation that I do not see improving any time in the near future. Her condition has stabilized at this point in time, albiet [sic] she is at a much lower functioning level than previous to this most recent accident . . ..

(*Id*. at 23-24.)

III.   **Analysis**

Under Indiana law, "questions of medical causation of a particular injury are questions of science necessarily dependent on the testimony of physicians and surgeons learned in such matters." *Hannan v. Pest Control Services, Inc.*, 734 N.E.2d 674, 679 (Ind. Ct. App. 2000). On the issue whether the accident with Brown caused Kopey any injury, the only medical expert she has identified who will testify on the issue is her treating physician, Dr. Davis. Progressive argues that it is entitled to summary judgment because Dr. Davis has not diagnosed any specific injury caused by the accident with Brown, he has only repeated and credited Kopey's subjective complaints of pain.

Moreover, according to Progressive, any connection Dr. Davis makes between the accident and Kopey's pain is based on a temporal connection only, which under Indiana law is not sufficient to establish causation. *See Outlaw v. Erbrich Products Co., Inc.*, 777 N.E.2d 14, 28-29 (Ind. Ct. App. 2002) ("The question of the existence of a causal relationship between an accident and a resulting permanent medical condition is *ordinarily* a complicated medical question outside the understanding of laypersons, and

4

expert testimony on the issue is required.") (Emphasis added.) As Progressive sees it, Dr. Davis hasn't given any "how" or "why" Kopey has increased pain as a result of the accident: he "doesn't even opine that any pre-existing injuries were aggravated" by the 2010 accident with Brown. (DE #18 at 809.) Kopey's response to Progressive's motion is that Dr. Davis has opined that she "was reinjured in 2010" by the accident, and that is enough to create an issue of fact for the jury.

The parties have cited the Indiana cases and the principles therein in a vacuum; neither has identified any cases with similar facts to the present, and attempted to analogize or distinguish those cases. Thus, the court points out first, as is suggested by the court's emphasis on the word "ordinarily" in the quotation above from *Outlaw*, that Progressive reads it and the precedent from which it derives too broadly.

In *Outlaw*, the plaintiff was seeking to overturn a decision made in a worker's compensation administrative proceeding in which she was denied benefits for a respiratory illness she claimed was caused by inhaling chemical vapors. Not only did the worker's compensation board have conflicting expert testimony that cigarette smoking caused the respiratory condition, 777 N.E.2d at 21-22, the medical expert retained by plaintiff, "[d]espite acknowledging the apparent absence of scientific evidence linking Outlaw's condition to any of the chemicals present in the toilet bowl cleaner, . . . was certain that exposure to the toilet bowl cleaner caused Outlaw's condition '[b]ecause she presented to Wishard [Hospital] after this spill, and she talks about that. And gets much worse after that.'" *Id.* at 20. Applying a standard of review

which would allow it to reverse the worker's compensation board's finding only if the evidence was such that reasonable people would be compelled to reach a contrary conclusion, *Id.* at 26, the court found that there was evidence supporting the board's decision, thus it could not "say here that the evidence is undisputed and leads inescapably to a result contrary to the board's finding." *Id.* at 28.

It is in this context that the court stated that "an expert's opinion is insufficient to establish causation when it is based only upon a temporal relationship between an event and a subsequent medical condition." *Id.* at 29, citing *Hannan v. Pest Control Services, Inc.*, 734 N.E.2d 674, 682 (Ind. Ct. App.2000). In *Hannan* the plaintiffs' claim was that exposure to chemicals in pesticide spraying had sickened them. The court excluded their expert's testimony under Indiana Rule of Evidence 702 as lacking in scientific reliability and granted a summary judgment to the defendant:

> The plaintiffs' purported experts sought to testify that the plaintiffs suffered from various ailments because of their alleged exposure to Dursban and Diazinon, two of the chemicals that PESCO sprayed at the residence. These prospective witnesses had no relevant information regarding the exposure level of the chemicals or the dose that the plaintiffs had allegedly ingested. At least one witness acknowledged that he was making an assumption as to the dose level. Additionally, while the ventilation qualities of the home were of importance, the plaintiffs' experts had never seen the residence and did not have any specific information regarding the size of the house or configuration of any ventilating system.
> There was only an equivocal diagnosis that Larry Hannan and Wilhite suffered from Reactive Airways Disease Syndrome (RADS) as a result of PESCO's treatment. Moreover, no medical or scientific literature supported a conclusion that the chemicals to which the plaintiffs were allegedly exposed could cause RADS. None of the experts offered theories

regarding alternative reasonable causes of the symptoms that the plaintiffs displayed.

734 N.E.2d at 678. In affirming that decision, the Indiana Court of Appeals stated:

> In sum, it is apparent from the proposed testimony of the experts that they were relying on a mere temporal coincidence of the pesticide application and the Hannans' alleged and self-reported illness. Such a relationship is insufficient to establish a prima facie case on the element of causation. *None of the purported experts performed any testing that would rule out alternative causes of the plaintiffs' ailments. Such "differential diagnosis" testing is important in toxic tort cases so that other causes may be negated.* Thus, the opinions of the plaintiffs' experts were tantamount to subjective belief or unsupported speculation.

*Id*. at 682 (citations omitted).[1] (Emphasis added.)

In short, while the cases relied on by Progressive establish that "ordinarily" a temporal relationship is not enough to establish causation in complicated cases,[2] none of

---

[1] The omitted citations are: 1) *Turner v. Davis,* 699 N.E.2d 1217, 1220 (Ind. Ct. App.1998) (plaintiff claimed that sleep disorder began after auto accident; this temporal relationship insufficient to present jury question without any medical expert testimony on causation); 2) *Tucker v. Nike,* 919 F. Supp. 1192 (N.D. Ind.1995) (expert medical opinion that back-tab pull on shoe caused Achilles tendon to rupture excluded where no testing to confirm hypothesis or to rule out admitted possible alternative causes was performed); *Indiana Michigan Power Co. v. Runge,* 717 N.E.2d 216 (Ind. Ct. App.1999) (plaintiffs lacked any reliable scientific expert testimony showing that exposure to electro-magnetic fields caused by defendant's power lines could cause their injuries.)

[2] *See also Todd v. Merrell Dow Pharmaceuticals, Inc.*, 942 F.2d 1173, 1179 (7th Cir. 1991) (claim that injuries caused by prescription drugs taken during pregnancy; summary judgment proper where plaintiff "failed to identify a single expert willing to provide testimony as to causation nor has she come forward with any scientific evidence of a causal link between the drug and . . . alleged injuries); *Porter v. Whitehall Laboratories, Inc.*, 791 F. Supp. 1335, 1334 (S.D. Ind. 1992) (plaintiff claimed that ibuprofen caused acute renal failure, but summary judgment granted to defendant where doctor's untested hypothesis was only support and "[e]very medical expert in this matter agrees that there is no scientific data establishing a causal link between ibuprofen"and plaintiff's condition); *Armstrong v. Cerestar USA, Inc.*, 775 N.E.2d 360, 368

7

them establish as an absolute rule that a temporal relationship can *never* be enough for a doctor to form a medical opinion based on a temporal relationship. As Progressive would have the rule, an emergency room doctor treating a patient reporting to have just dropped an anvil on his or her foot would not be able to form an opinion that the accident had caused the foot to swell. The Indiana case the court has found with factual circumstances most analogous to the present indicates that Indiana's requirements for expert testimony on causation do not dictate such an illogical result.

That case is *Noblesville Casting Div. of TRW, Inc. v. Prince*, 438 N.E.2d 722 (Ind. 1982). In *Noblesville Casting* the plaintiff, Prince, was lifting large flasks weighing two to three-hundred pounds with the help of two co-workers. *Id*. at 724. The weight shifted towards Prince and he:

> experienced immediate pain in his back, groin, and left leg, and had difficulty straightening his back. . . .
>    A doctor examined Prince but found no evidence of a hernia. Thereafter, Prince resumed work but continued to experience intense and periodic pain in his back, as well as in his left leg. At times the pain prevented him from working. . . .
>    [Five months later] he entered the hospital for back surgery. A spinal fusion, which was designed to restrict motion and thereby alleviate pain, was performed on November 8, 1977.

*Id*. Prince obtained an award of worker's compensation benefits, and his employer sought judicial review of the administrative decision granting them, arguing that the

---

(Ind. Ct. App. 2002) (expert's opinion on causation not reliable where expert "not a licensed physician with training, knowledge and experience to make the proximate cause determination that Armstrong became light-headed due to exposure to hydrogen sulfide gas.").

medical expert testimony considered by the worker's compensation board was not sufficient to establish causation to a reasonable degree of medical certainty. *Id*. at 725. The lower court reversed the award. *Id.*

The sole expert testimony in the administrative proceeding had come from Dr. Norman, who performed the spinal fusion surgery. *Id*. He testified that Prince had pre-existing arthritic and degenerative problems with his spine, and that it was "possible" that the incident lifting the flask had aggravated that condition. *Id*. at 725-26. The Indiana Supreme Court held that the lower court should have affirmed the award of worker's compensation benefits, reasoning that "[o]nce . . . foundational requirements have been satisfied and the opinion elicited, the expert witness is subject to the hallmark of our adversarial system-cross-examination" and the "strengths and weaknesses of the expert's opinion may be questioned against the facts, its conclusiveness or lack thereof may be explored, and any lack of certitude may be fully revealed to the finder of fact." *Id.* at 729.

Most importantly the court observed:

> Of course, an expert's opinion that something is "possible" or "could have been" may be sufficient to sustain a verdict or award when it has been rendered in conjunction with other evidence concerning the material factual question to be proved. No hard and fast rule can be stated; the matter is a factual one to be resolved on a case-by-case basis, depending upon the particular standards of proof or review which are applicable, as well as the evidence presented, including the expertise of the witness and the data and analytical methods upon which the opinion is based.
> In the case before us, Dr. Norman's testimony that Prince's medical problems were possibly linked to the May 6, 1976 incident was of probative value and was properly admitted; as we recently recognized in

> *Rork v. Szabo Foods*, (1982) Ind., 436 N.E.2d 64, "the question of the causal connection between a permanent condition, a work-related injury, and a pre-existing affliction or condition is a complicated medical question ...." *Id*. at 70. Norman's opinion could only serve to assist the finder of fact in intelligently resolving that question.

*Id*. at 731 -732. (Ind. 1982). *Noblesville Casting* indicates that a treating physician familiar with an individual's existing injuries is qualified to give an expert opinion that an accident has aggravated those injuries, and Progressive has cited no case to the contrary. Moreover, a treating physican drawing an inference of a causal connection between pain suffered immediately after an automobile accident is similar to the inference of a causal connection between immediate back pain and the lifting of a 200-300 pound object, and not like the "temporal connection" cases cited by Progressive, which involved either complicated medical issues or temporal connections unsupported by any expert evidence at all, only by the plaintiff's lay opinion.

## IV.     Conclusion

In the present case it is undisputed that plaintiff Kopey had significant preexisting injuries from an auto accident in 2007 at the time of the auto accident in 2010. She immediately complained of increased pain from the new accident, and her treating physician, Dr. Davis, is of the opinion that she "was reinjured in 2010" and at the time of his report was "at a much lower functioning level than previous to this most recent accident." (DE #18-1 at 23-24.) Progressive has not convinced the court that Dr. Davis is unqualified to render that opinion or that his opinion is unworthy of being considered as expert testimony.

On summary judgment, plaintiff is entitled to reasonable inferences, and Dr. Davis's opinion, fairly read, is that the 2010 accident aggravated Kopey's existing injuries. Progresive has not shown the court any case stating that it is unsound medical science for a doctor to arrive at such a conclusion. The strength or weakness of Dr. Davis's opinion, and its validity or invalidity, are matters for cross examination and evaluation by the trier of fact.

That is not to say that Progressive's argument did not present a close question. For that reason, and because Kopey did not make her request for sanctions in a separate motion after requesting withdrawal as is required by FED. R. CIV. P. 11(c)(2), Progressive's motion to strike (DE #22) is **GRANTED**; however, Progressive's motion for summary judgment (DE #17) is **DENIED** for the reasons given above.

**SO ORDERED.**

Date: February 26, 2014

     s/ James T. Moody  
JUDGE JAMES T. MOODY  
UNITED STATES DISTRICT COURT